UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WILMER LINARES,

                                Petitioner,

                 v.

JOSEPH T. SMITH, Superintendent of Shawangunk
Correctional Facility,

                            Respondent.
---------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-5442 (SJF)

**FILED**
**CLERK**

6/30/2020 12:43 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:

        Wilmer Linares ("Linares" or "Petitioner"), proceeding *pro se,* filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his 2010 conviction in New York Supreme Court, Nassau County, upon his plea of guilty to murder in the second degree in violation of N.Y. PENAL LAW §125.25(1). Petition ("Pet."), Docket Entry ("DE") [1]. For the reasons set forth below, the petition is denied and the case dismissed.

## I.  BACKGROUND[1]

## A. Relevant Facts

        1. Indictment

        On October 31, 2009, Petitioner, who had been romantically involved with Johnny Acosta's ex-girlfriend, entered a gas station where Acosta worked and repeatedly stabbed him in the face and body. On November 3, 2009, Acosta died from his wounds. The police arrested Petitioner on November 13, 2009, and he was subsequently indicted on one count of murder in

---

[1] The background is drawn from the Petition and transcripts of proceedings held before the state court in 2010 and 2011. *See* Attachments to Respondent's Memorandum of Law in Opposition ("Resp. Opp."), DE [7].

the second degree pursuant to New York Penal Law § 125.25(1), and one count of criminal possession of a weapon in the fourth degree pursuant to New York Penal Law § 265.01 (2).

### 2. Change of Plea Proceeding

On July 26, 2010, Petitioner, accompanied by his attorney, John Bermingham,[2] and a Spanish language interpreter, appeared before the Honorable William C. Donnino.   Transcript of Proceedings ("7/26/10 Tr."), Resp. Opp., DE [7-1].  The court indicated that after conferencing the case, Linares had agreed to plead guilty to count one, murder in the second degree, and that the court had committed to imposing a sentence of twenty years to life.  *Id.* at 2.  The court then conducted an allocution of the defendant.

Linares acknowledged and answered "yes" that he had spoken with his attorney about pleading guilty and that he was satisfied with the services of his lawyer.  7/26/10 Tr. at 3-4.  He answered "yes" when asked if it was true that on or about October 31, 2009, "you, with intent to cause the death of Johnny Acosta, did, in fact, cause the death of Johnny Acosta by stabbing him with a knife?"  *Id.* at 4.  He answered "yes" when asked, *inter alia,* if he understood that by pleading guilty he had relinquished: the right to remain silent, 7/26/10 Tr. at 4; the right to a jury trial, *id.*; the right to require the government to prove his guilt beyond a reasonable doubt to a jury, *id.* at 5; and any defense he may have had to the charges, *id.*.  The court further secured Linares' assent regarding the waiver of his right to appeal, *id.* at 5-6, and his acknowledgement that he "will absolutely be deported" from the United Sates as a result of the conviction.  *Id.* at 7.

As to any influence upon his decision to plead guilty, the following exchange occurred:

---

[2] Counsel's name is spelled alternatively as "Bermingham" or "Birmingham" in the transcripts, but there is no suggestion that the references are not to the same individual.  The Court will utilize the spelling adopted by Petitioner.

> THE COURT: Other than the plea agreement, which I placed on the record, has anyone made any other promise, commitment or representation of any kind to get you to plead guilty?
>
> THE DEFENDANT:  How do you mean?
>
> THE COURT:  I have promised you a sentence of twenty years to life.  Have I or anyone else promised you something else of any kind to get you to plead guilty?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Has anyone threatened or forced you or pressured you to plead guilty against your will?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Have I or your lawyer said anything to you to have you plead guilty against your will?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Are you, therefore, pleading guilty voluntarily of your own free will?
>
> THE DEFENDANT:  Yes.

7/26/10 Tr. at 8.  At the conclusion of the colloquy, the court accepted defendant's guilty plea, entered it upon the record, and set sentencing for September 9, 2010.  *Id.* at 9.

### 3. Motion to Withdraw Guilty Plea

On the date set for sentencing, Petitioner asked to withdraw his plea "because I am not guilty of what I am accused of."  Transcript of Proceedings ("9/9/10 Tr.") at 3, Resp. Opp., DE [7-2].  He further stated that:

> On the 26th day of July, I pled guilty because I didn't know what to do.  Four days before that, the lawyer went to visit me and told me that this was the last opportunity that I had to say what I did.
>
> And I told him I didn't want to do it, because I was not guilty.  I told him all the time that I did not want to plead guilty to a crime that I had not committed.  And that day, I felt that the world just came down on me.  He told me that this was my last

3

> chance because we have been negotiating on our own.  That the
> judge was going to get mad, and that I had no chances. That
> everything would be in vain.
>
>            \*\*\*
>
> And he told me that it would not be good for me to have the
> judge against me and mad at me, and that's why I decided to
> accept and plead guilty.

*Id.* at 3-4.  The court adjourned this proceeding to obtain the minutes from the plea proceeding.

At the next proceeding on October 8, 2010, the court asked petitioner's counsel, Mr. Bermingham, to respond to Linares' allegations. Transcript of Proceedings ("10/8/10 Tr.") at 2, Resp. Opp., DE [7-3].  Bermingham described the evidence against Linares and stated that once he'd had the opportunity to review a video of people coming in and out of the apartment where Linares was living, "along with the video of the murder at the gasoline station, I had a detailed meeting at the jail with Mr. Linares explaining what went into the plea because the evidence was quite strong in favor of a conviction."  *Id.* at 3.  Counsel requested and received Petitioner's authority to pursue plea negotiations with the prosecution and explained to him that a guilty plea would require him to acknowledge his guilt under oath.  *Id.* at 3-4.  During the negotiations, the State  indicated that it would only be interested in a "top count plea" to the murder in the second degree charge.  *Id.* at 4.  Bermingham represented that he returned to the jail and told Petitioner that he could go to trial, or "make a top count plea and see if the judge would give a reduced sentence which might be acceptable to you."  *Id.*  He again advised Petitioner that he would be required to admit under oath that he was in fact guilty of the crime, and Petitioner indicated he understood.  *Id.*

Bermingham described a "rather lengthy conference" in which the prosecution sought a minimum term of twenty-two (22) years, Bermingham sought sixteen (16) years, and the court "made a commitment of 20 years to life with certain advantages" that Bermingham presented to

4

his client including "a preferred much shorter sentence of incarceration, a much better opportunity to secure parole, and by accepting responsibility, you might be able to get at prison a less constrictive prison assignment."  10/8/10 Tr. at 5.   Bermingham returned to the jail to consult with Petitioner, explained again that he would have to admit guilt "and tell the Court he was pleading guilty because he was in fact guilty."  *Id.*  According to Bermingham, Linares agreed to take the plea.

At the conclusion of this proceeding, the court indicated that it was willing to relieve Bermingham and assign new counsel, if Linares wished it.  10/8/10 Tr. at 6.  Linares agreed, and the matter was adjourned pending appearance of new counsel.  .

On April 13, 2011, petitioner's newly appointed counsel, Kenneth L. St. Bernard, submitted a formal motion to "vacate" the plea of guilty on the grounds that it was entered "under duress."  Motion to Vacate Plea, Resp. Opp. DE [7-5].  The motion, which was purportedly made pursuant to §440.10(1)(h) of the Criminal Procedure Law, expressly sought vacateur of the guilty plea due to ineffective assistance of counsel.  Linares argued that "it is clear that his plea was induced by the fact that his former attorney made statements to him which had the effect of intimidating him into pleading guilty against his will."  Affirmation of Kenneth L. St. Bernard, ¶3.  The State submitted an affirmation in opposition stating that: (1) the motion was improperly brought under §440.10(h) instead of CPL §330.30(1); (2) there is no evidence that the plea was coerced, involuntary, or hastily taken; and (3) there is no ineffective assistance of counsel since defendant admitted that he decided to plead guilty.  Affirmation of Zeena J. Abdi, Resp. Opp. DE [7-6].

On May 19, 2011, the court issued a written decision denying the motion to withdraw the guilty plea, finding that "as to both defendant's allegations of innocence and his allegations of

coercion, these allegations are contradicted by the defendant's statements during his plea colloquy." Decision & Order ("Order") at 3, Resp. Opp., DE [7-7]. The court noted that the allegations were belied by the plea colloquy since, at the time the plea was entered, the court questioned the defendant, observed his demeanor, and made the determinations that (1) "his admission to all the elements of the crime, and his assurance to the Court that he was pleading guilty because he was in fact guilty, were credible," *id.* at 2; and (2) "defendant's statements that he had not been coerced into pleading guilty by his attorney, the Court, or anyone else were credible." *Id.* at 3. The court concluded that the allegations set forth in the motion did not undermine these determinations and denied the motion. *Id.* [3]

On May 25, 2011, Linares was sentenced to the agreed upon term of twenty years to life. Transcript of Proceedings ("5/25/11 Tr."), Resp. Opp., DE [7-4].

**B. Procedural History**

1. State Court Proceedings

Petitioner filed a Notice of Appeal of his conviction, and his appellate counsel filed a brief in the Supreme Court of the State of New York, Appellate Division, Second Department. *See* Brief for Defendant-Appellant ("App. Brief"), Resp. Opp. DE [7-8].. On direct appeal, Linares raised two claims: (1) that he was denied his constitutional right to effective assistance of trial counsel because (a) his first attorney "coerced him into pleading guilty by convincing him that if he did not do so, the judge would be angry which would have a detrimental effect on his case and despite his protestations of innocence," *id.* at 8; and (b) his second attorney "made a

---

[3] The court observed in a footnote that attorney Bermingham "gave a credible account of his discussions about the plea with the defendant, and that this account does not support the defendant's allegations," but expressly noted that it "need not and does not rely on the attorney's account in determining this application." Order at 2, n.2.

6

motion to withdraw his guilty plea pursuant to the incorrect section of the Criminal Procedure Law," *id.*; and (2) that the trial court erred in denying his motion to withdraw his guilty plea.

The Appellate Division affirmed the judgment of conviction in a decision dated January 22, 2014. *People v. Linares,* 113 A.D.3d 796, 978 N.Y.S.2d 875 (2d Dep't 2014).  Noting that determination of a motion to withdraw a guilty plea lies within the sound discretion of the court, the Appellate Division, found that the lower court "providently exercised its discretion" in denying Petitioner's motion to withdraw his plea, and that his claim that the plea "was coerced by off-the-record comments by his attorney was contradicted by the thorough plea colloquy."  *Id.* at 797.  The appellate court also found that Linares "was not deprived of the effective assistance of counsel."  *Id.*

Petitioner's request for leave to appeal to the New York Court of Appeals was denied on June 13, 2014.  *People v. Linares,* 23 N.Y.3d 1022, 16 N.E.3d 1285, 992 N.Y.S.2d 805  (2014) (Table).  He did not file a petition for certiorari with the United States Supreme Court, nor has he filed a post-conviction motion for relief under section 440.10 of the New York Criminal Procedure Law.

2.  Habeas Petition

In his petition, Linares claims only that he received ineffective assistance of counsel from both attorneys who represented him:(1) his first counsel "coerced" him to plead guilty, and (2) his second assigned counsel "was not familiar with the facts of the case and filed a motion to withdraw [the guilty plea] pursuant to the incorrect section of the criminal procedure law."  Pet. at 4.  Upon receipt of the State's opposition, Linares sought, *inter alia,* an extension of time to submit a reply.  *See* DE [8].  Although the Court granted him an extension of time to file a reply, that deadline has long passed and he has not done so.

## II.  LEGAL STANDARDS[4]

### A.  Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court considering a claim that was decided on the merits in a state court proceeding may grant relief only if the state court's decision was "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).   To warrant review under the AEDPA's standard of deference, the claim need only be adjudicated on the merits.   "[T]he state court need not refer to the federal claim or to federal law as a prerequisite to the deferential AEDPA standard under 28 U.S.C. § 2254(d)(1)."  *Hines v. Miller,* 318 F.3d 157, 160 (2d Cir. 2003).

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (internal quotation marks and citation omitted; alteration in original).

---

[4] As Linares is appearing *pro se,* the Court liberally construes his petition "to raise the strongest arguments that [it] suggest[s]."  *Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks and citations omitted).

The claims set forth in the Petition were presented on direct appeal and ruled on by the Appellate Division.  As the claims were adjudicated on the merits, application of the AEDPA's deferential standard is warranted.  When applying this standard, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham,* 607 F.3d 36, 48 (2d Cir. 2010); *see also* §2254(e)(1). "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson,* 569 U.S. 505, 508-09, 133 S. Ct. 1990, 186 L. Ed. 2d 62 (2013) (internal quotation marks and citation omitted).

**B.  Ineffective Assistance of Counsel**

To establish an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984).  Although a petitioner must satisfy both *Strickland* prongs, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.,* at 697.  "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

A defendant's claim that his guilty plea was involuntary due to ineffective assistance of counsel is analyzed using the *Strickland* test.  The defendant must establish "that (1) 'counsel's representation fell below an objective standard of reasonableness'; and (2) 'there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Agyekum v. United States,* No. 01 CIV. 5808, 2002 WL 1000950, at * 5 (S.D.N.Y. May 16, 2002) (quoting *Hill v. Lockhart,* 474 U.S. 52, 57-58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

A petitioner seeking review of a state court decision regarding an ineffective assistance of counsel claim faces additional challenges since "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter,* 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (internal quotation marks and citation omitted); *see generally Fischer v. Smith,* 780 F.3d 556, 562 (2d Cir. 2015) (according "State court decisions a double measure of deference on *Strickland* challenges"). Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance... Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone,* 535 U.S. 685, 698-99, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). On habeas review, a federal court "may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh,* 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington,* 562 U.S. at 103 (alteration in original)).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel by First Attorney

Petitioner claims that he received ineffective assistance of counsel from his first attorney because he "coerced" Petitioner to plead guilty by making "inflammatory statements regarding the judge's attitude toward trial if petitioner rejected the plea offer," and informing him that if he went to trial, "the judge would be angry and it would not be good for petitioner," Pet. at 3. He

10

characterizes these purported statements as "misrepresentation of the facts." *Id.* Petitioner has failed to establish that counsel's representation was either deficient or prejudicial.

As to any purported deficiency of counsel's representation, Petitioner offers only conclusory, self-serving statements and does not identify conduct by his first attorney that can reasonably be seen as coercive under the facts of this case. The purported coercion appears to be nothing more than the offering of counsel's professional opinion regarding the strength of the case, and his sound advice to plead guilty in exchange for a reduction in the minimum term of incarceration. A defense attorney's "blunt rendering of an honest but negative assessment of [a defendant's] chances at trial, combined with advice to enter the plea [does not] constitute improper behavior or coercion that would suffice to invalidate a plea." *United States v. Juncal,* 245 F.3d 166, 172 (2d Cir. 2001). Petitioner's counsel was in the best position to weigh the risks and assess the evidence against his client, and the recommendation that Linares accept a plea that resulted in a 20% reduction in the minimum sentence was not unreasonable, especially in light of evidence that counsel assessed to be "quite strong in favor of a conviction."

Furthermore, Petitioner's statements regarding coercion are refuted by his assurances during the plea colloquy that he was satisfied with counsel's services, that he had not been threatened or forced by anyone, including, specifically, his attorney, to enter the plea, and that he was pleading voluntarily and of his own free will. "[W]here a petitioner has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the petitioner's sworn statements and hold him to them." *Scott v. Superintendent, Mid-Orange Corr. Facility,* No. 03 Civ. 6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006); *see also Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)

(representations by a defendant at a plea hearing, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

It is clear from the transcript that the court carefully explained all of the constitutional rights that would be relinquished by Petitioner upon pleading guilty, and made certain that the choice to plead guilty was made by Petitioner of his own free will. Linares participated in the plea allocution, indicating unambiguously that he was aware of the consequences of his guilty plea. He admitted that he had committed the acts charged and that he did so with intent.   He acknowledged that he understood his rights, and that no one, including the court or counsel, had threatened, forced, or pressured him to plead guilty.  There is nothing in the record to indicate his decision was anything other than intelligent, knowing, and voluntary, and thus the Appellate Division's determination that his plea was not coerced and that he was not deprived of effective assistance of counsel was not unreasonable.

The prejudice prong of *Strickland* requires Petitioner to establish that there is a "reasonable probability" that, but for the error, he would not have pled guilty and would have insisted on a trial.  Here, Petitioner's unadorned assertion that he "wanted" a trial does not satisfy this requirement.   A conclusory, self-serving statement that, but for counsel's alleged ineffectiveness, he would have gone to trial, does not by itself establish prejudice under *Strickland.  See Calderon v. United States,* 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013);  *Boakye v. United States,* No., 09 Civ. 8217, 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010); *Scott v. Superintendent, Mid-Orange Corr. Facility,* No. 03 Civ. 6383, 2006 WL 3095760, at *9

12

(E.D.N.Y. Oct. 31, 2006).  He has not presented an argument or any evidence to counter the strong video and photographic evidence of guilt that informed counsel's recommendation that he plead guilty, nor has he identified any weaknesses in the State's case.  His bare, conclusory assertion that he wanted a trial is insufficient to establish prejudice under *Strickland.*

Linares has not overcome the presumption of correctness afforded to the state court's determinations, nor has he shown that the state court unreasonably applied clearly established federal law or was unreasonable given the facts.[5]   Accordingly, habeas relief is unwarranted.

## B.  Ineffective Assistance of Counsel by Second Attorney

Petitioner claims that his second assigned counsel deprived him of effective assistance because he "filed a motion to withdraw [the guilty plea] pursuant to the incorrect section of the criminal procedure law."  Pet. at 4.  This claim was presented on direct appeal.  *See* App. Brief at 8 (his second attorney "made a motion to withdraw his guilty plea pursuant to the incorrect section of the Criminal Procedure Law which applies to post-judgment motions").  Assuming that this contention is correct, Petitioner has completely failed to advance any reason why the error was prejudicial.  He has never suggested that the motion was substantively deficient, and, most importantly, the trial court treated the motion as one to withdraw the guilty plea without

---

[5] In finding that Petitioner was not deprived of effective assistance of counsel, the Appellate Division cited only state cases and not *Strickland.*  Although ineffective assistance of counsel claims brought pursuant to the New York State Constitution are analyzed under a flexible standard to determine whether counsel has provided meaningful representation, *see People Benevento,* 91 N.Y.2d 709, 712, 697 N.E.2d 584, 674 N.Y.S.2d 629 (1998), the Second Circuit has found that the New York standard is "not contrary to *Strickland.*"  *Rosario v. Ercole,* 601 F.3d 118, 126 (2d Cir. 2010).  Indeed, the Second Circuit has recognized that "the New York standard is, in practice and in intent, more generous to defendants than the federal standard."  *Id.* at 125.  A defendant may state a claim under New York's Constitution without establishing that, but for the attorney's error, there is a substantial likelihood that the result would have been different.   "Even if the errors are harmless in the sense that the outcome would remain the same, a defendant may still meet the New York prejudice standard by demonstrating that the proceedings were fundamentally unfair."  *Id.* (citing *People v. Stultz,* 2 N.Y.3d 277, 283-84, 810 N.E.2d 883, 778 N.Y.S.2d 431 (2004)).

reference to any section of the Criminal Procedure Law.  As it is clear that Petitioner was not prejudiced by any erroneous citation, the Appellate Division's determination that he was not deprived effective assistance of counsel was not an unreasonable application of federal law.[6]

## IV.  CONCLUSION

For all the foregoing reasons, the petition for a writ of habeas corpus is denied and the proceeding is dismissed in its entirety.  The Court declines to issue a certificate of appealability because Linares has not "made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(1); *see also Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Contino v. United States*, 535 F.3d 124, 127 (2d Cir.2 008).  Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253.

The Clerk of Court is directed to dismiss the Petition and enter judgment in favor of the Respondent, and is further directed to serve a copy of this Memorandum and Order and the judgment upon Petitioner, note the service on the docket, and close the case.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
       June 30, 2020

---

[6] Linares briefly states in his petition that his second attorney also provided ineffective assistance of counsel because he was "not familiar with the facts of the case."  Pet. at 4.  Although the Appellate Division found that Linares was not deprived of effective assistance of counsel, it is not clear that this particular basis for his claim was properly presented on appeal.  To the extent a claim on this basis might be unexhausted, it is nevertheless dismissed on the merits as it is conclusory, lacks detail, and is entirely unsubstantiated . *See* 28 U.S.C. §2254(b)(2); *Skeete v. New York*, No. 03-CV-2903, 2003 WL 22709079, at * (E.D.N.Y. Nov. 17, 2003) ("vague, conclusory and unsupported claims do not advance a viable claim for *habeas corpus* relief").